NABORS *v.* MATHIS.

[76 South. 549, Division B.]

1. LIBEL AND SLANDER. *Actionable words. Insulting language.*
Under Code 1906, section 10, providing that all words which from their usual construction and common acceptation are considered as insults and calculated to lead to a breach of the peace shall be actionable, it was slanderous *per se* to say of a member of the legislature that he had received money to vote for an appropriation, since such language conveyed a direct charge that the plaintiff worked for and accepted a bribe.

2. SAME.
In such case it was error for the court to instruct the jury to find for the defendant unless they believed the words used were spoken in an insulting manner.

APPEAL from the circuit court of Alcorn county.
HON. CLAUDE CLAYTON, Judge.

Suit by S. M. Nabors against M. C. Mathis. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*T. H. Johnson,* for appellant.

Appellant contends that the court below erred in granting the third and fifth instructions for appellees for two reasons, towit: first, these instructions do not correctly state the law as applicable to the case at bar; and,

second, because these two instructions are in direct conflict with the first, second, third, fourth, and eighth instructions given for appellant, and left the jury without a proper guide as to the law in the case.

We contend that if the words charged in the declaration were spoken by appellee, or if he made use of synonymous words conveying the same specific idea, appellant was entitled to recover without being required to prove that the words were spoken in an insulting manner and in a manner calculated to lead to a breach of the peace as was charged in the instructions complained of by appellant.

The words alleged to have been uttered by appellee charged appellant with the commission of a crime, the crime of accepting a bribe—a felony, one involving great moral turpitude. It is true that the charge of crime in the declaration is not made with the technical accuracy and precision as would be required in an indictment, nor is it charged by the specific name of the offense; this is not necessary, for if the defamatory words taken in the natural and ordinary signification fairly import a criminal charge, it is sufficient. 25 Cyc. 539.

In the case of *Furr* v. *Speed,* 21 So. 562, where the words charged to have been uttered were, "Mrs. Furr poisoned me," this court, on page 563, about the middle of the first column, said: "Poisoning was and is a crime at common law and by statute,—murder, if death ensues; attempt to murder if death does not follow—and to charge either crime upon a person by any expression generally and commonly understood to the persons addressed constitutes the wrong, and the words are actionable."

The crime charged against appellant by the words used in the declaration was as unquestionable a charge of accepting a bribe, as the charge in the case above cited, viz., "Mrs. Furr poisoned me" was a charge of murder, or attempt to murder, and would generally and commonly be so understood.

Nor is it necessary that the crime should be directly charged, for if it is published as an expression of belief, or as an opinion, it is as effectual as if made in positive language. 25 Cyc. 360.

If the words alleged in the declaration, either directly, or indirectly as the expression of an opinion, charge appellant with a crime, they are actionable *per se* under the common law. We presume that appellee will admit this, and that it will not be necessary to cite authorities to support a principle of law so elementary.

If the words were actionable *per se* at common law and plaintiff would be entitled to recover upon proof of the words alleged, or synonymous words, what effect does section 10, Code of 1906, have upon them? This statute does not change the common law slander, further than to extend the grounds warranting an action of slander much further than at common law, and makes words actionable which were not so at common law.

In the old case of *Crawford* v. *Mellton,* 12 Smed. & M. 330, where the words charged to have been uttered were, "Crawford swore a lie and I can prove it," this court, after stating that such words were not actionable at common law, but were made so by the statue, as from their usual construction and acceptation they are insulting, and likely to lead to a breach of the peace, in commenting on the purpose of the statute, said:

"Manifestly, the first object of the statute was to extend the grounds warranting the action much further than they existed at common law, and to make words actionable, which theretofore were not so. Still, while this seems to be the main scope, it further provides, that no plea, exception, demurrer, etc."

Thus clearly showing that it was not the purpose or intention of the legislature, by such statute, to change the common law as to slander, but simply to extend the law to words which were not actionable at common law; and the secondary object of the statute was to change the common law pleading to the extent therein set out.

Words which were actionable *per se* at common, are still actionable *per se* under the statute, and it is not necessary to allege or prove that the words were spoken in an insulting manner as a condition precedent to recovery. The words themselves constitute the grossest kind of insult. If appellee uttered such words, he charged appellant with a most odious crime, one that would not only render him infamous under the law, but forever infamous in the eyes of all right thinking people.

The very language of the statute itself is such as to preclude the idea that words which are in themselves insulting, such as a charge of crime, must be said in an insulting manner before recovery can be had. It provides that, "All words which, from their usual construction and common acceptation, are considered as insults, and calculated to lead to a breach of the peace, shall be actionable, etc." There is absolutely nothing in the statute which requires words which, from their usual construction and common acceptation, are considered as insults, and which are calculated to lead to a breach of the peace, to be spoken in an insulting manner, in order that they may be actionable. This court has said in the case of *Crawford* v. *Mellton, supra,* page 330:

"The only thing necessary to bring words spoken of another within the meaning of our statute, are, that they must be insulting and calculated to lead to a breach of the peace."

If the words uttered by appellee are not inherently insulting, and are not calculated to lead to a breach of the peace, it would be impossible to conceive of words which would be considered as insults, words which are sufficiently cross to arouse the ire of a man to the point where he would be calculated to commit a breach of peace. If these words do not come within the literal meaning of the statute, no words can be uttered to fall within its condemnation. If such words, from heir usual construction and common acceptation, are considered insults, and are cal--

culated to lead to a breach of the peace, they are actionable regardless of the manner of their speaking.

*W. C. Sweat,* for appellee.

The only complaint that counsel for the appellant has, the only error alleged, is the error in giving the third and fifth instructions given for the appellee. That part of the third instruction complained of is as follows: ''Yet unless you further believe by a preponderance of the testimony that they were spoken in an insulting manner you cannot find for the plaintiff; and you will find for the defendant in this case.''

That part of the fifth instruction complained of, is as follows: ''Yet unless you further believe that they were spoken in an insulting manner and in a manner calculated to lead to a breach of the peace, you will find for the defendant.''

It is contended by the appellant that the manner of the speaking of the words have nothing to do with the right of recovery, and that the mere fact that words were spoken, as were alleged to have been spoken by the defendant in this case, is sufficient in itself to entitle the plaintiff to damages; but our contention is that the simple fact that these words may have been spoken by the defendant is not sufficient in itself to entitle plaintiff to recover, but the manner in which they are spoken is the very gist of the action. This court has held in the case of *Crawford* v. *Melton,* 12 Smeads & Marshall, 331, that: ''The gravamen of the action is the saying of any words, whether true or false, in an insulting manner.''

It is said by counsel for the appellee that when the court used this expression, it had under consideration the secondary feature of the law, the justification by way of setting out the truth of the charge; but, as the expression of the court itself shows, it was considering the primary feature of the law.

The manner in which the words are spoken is not only an important consideraion under the law, but the manner of the speaking of the words is the very foundation on which the plaintiff must rest his case. Suppose the words were spoken in such a manner as to show that the defendant knew that they were not true and that he placed no credence in them, could it be said that they are actionable then? If they are spoken in such a manner as not to lead to a breach of the peace, then plaintiff would certainly have no ground for complaint. The plaintiff must make out his case by a preponderance of the testimony. Why is it placing too much burden on the plaintiff to be required to show that the words were spoken in such a manner as would be calculated to lead to a breach of the peace? If they are spoken in such a manner not calculating to lead to a breach of the peace, he has no cause of action. If they are spoken in a manner calculated to lead to a breach of the peace, he had a cause of action. The burden is on him to show that he has a cause of action. He must show not only that the words were spoken, but that they were spoken in an insulting manner. To say that the plaintiff must show that the defendant spoke the words in an insulting manner is nothing more nor less than saying that he must show the intent of the defendant. If his manner is such he must show the intent of the defendant. If his manner is such as to indicate that his intention is malicious or mischievous, or that he intended to do the plaintiff the injury, then the plaintiff has a cause of action, if the intention was otherwise, the plaintiff has not. The instruction approved by the court in the case of *Furr* v. *Speed,* 74 Miss. 424, carries out this idea.

"The court further instructs the jury, for the defendant, that unless they believe, from the evidence, that the defendant intended, by what he said, to charge the plaintiff with the intentionally administering poison to him, with intent to kill and murder him, then they will find for defendant."

Conceding for the sake of argument that instructions three and five, given defendant, did not correctly state the law, the plaintiff cannot complain for the reason that the error there complained of is entirely cured by the instruction for the plaintiff.

This court will not do a vain and useless thing. A case will not be reversed for error which is harmless or for error which the court is bound to conclude would not change the result. Why reverse a case and order a new trial when the testimony is so overwhelmingly in favor of one of the parties that no other conclusion could be reached than the one which was reached in the former trial? We say that there was no error committed by the court below; and, even if there was, it was harmless error and no other result would be reached than the one which was reached, and the case should be affirmed.

COOK, P. J., delivered the opinion of the court.

Appellant began this suit in the circuit court of Alcorn county, under section 10, Code 1906, "Actionable Words." The evidence in support of the averments of the declaration was conflicting. Plaintiff proved by several witnesses that defendant said in the presence of witnesses that he could prove that plaintiff, while acting as a member of the legislature, had—"voted to kill our home Agricultural School at Kossuth, and voted and did all he could to get a fifty thousand dollar appropriation for a negro school in the Delta. I can't prove this, gentlemen, but it is my honest opinion, and the opinion of others, that he got eight thousand dollars or ten thousand dollars from some of them rich negroes in the Delta to give them that school."

The witnesses did not agree as to the exact words employed by defendant, but they were in substantial agreement that he used the words above quoted, or words of similar import, conveying the imputation that that plaintiff had been paid for his vote and influence.

The evidence for defendant contradicted the evidence for plaintiff. In this state of the record, the court, at the request of defendant, instructed the jury as follows:

No. 3. "The court charges the jury for the defendant that the gravamen of the action in this case is the fact that the words were spoken by the defendant of the plaintiff in an insulting manner, calculated to lead to a breach of the peace; and although you may believe by a preponderance of the testimony that the words were spoken by defendant, yet unless you further believe by a preponderance of the testimony that they were spoken in an insulting manner, you cannot find for the plaintiff; and you will find for the defendant in this case."

No. 5. "The court charges the jury for the defendant that, although you may believe that the defendant spoke the words alleged to have been spoken by him, or that he spoke the words of similar meaning, unless you further believe that they were spoken in an insulting manner and in a manner calculated to lead to breach of the peace, you will find for the defendant."

The jury returned the verdict for the defendant, and it is insisted that they were influenced to do so by the instructions just quoted.

There can be no doubt that plaintiff was entitled to a verdict, if the jury believed that defendant used the language imputed to him. The words were libelous *per se.* They conveyed a direct charge that plaintiff worked for and accepted a bribe; that he was a felon and should be in the penitentiary rather than in the legislature. There is no question of the insulting character of the language Mr. Mathis is said to have used, and we may say, with confidence, that the average adult male would "raise a rough-house" and manhandle the fellow who charged that he had perjured himself and accepted a bribe.

The instructions should not have been given, and we cannot say that they did not mislead the jury.

*Reversed and remanded.*