ROY NOBLE LEE, Chief Justice,
for the Court:
Carol Isaacks Reed sued her former husband, Jimmie Isaacks, in the Circuit Court of Washington County, Mississippi, under the Mississippi Actionable Words Statute, Mississippi Code Annotated § 95-1-1 (1972), for writing and circulating a written statement accusing her of serious misconduct. Jimmie Isaacks represented himself pro se during the trial. The jury returned a verdict for Reed in the sum of five thousand dollars ($5,000) actual damages and twenty thousand dollars ($20,000) punitive damages. Jimmie Isaacks appeals to this Court and assigns three errors in the trial below.

Facts

Appellant and appellee were married for approximately seventeen (17) years and were divorced in March, 1986. One son, Todd Jason Isaacks, age seventeen (17) years, was born of the marriage, and he remained with his father after the divorce. Appellant is employed with Swift Independent Packing Company, and appellee is a beautician. The record reflects that the parties had a stormy marriage, ending in bitterness, which bitterness has survived the divorce.
*410 On the evening March 7, 1986, the day after the divorce of the parties, a written statement highly critical of appellee was placed on windshields of cars parked at the Maranantha Assembly of God church in Greenville. Appellee was a member of the church. The same written statement was placed in the mailboxes of the church minister and other members of the church, and, likewise, on the church bulletin board. The record does not reflect that anyone observed the circulation of the statement. It follows:
Have you ever wondered if there is someone you know that is in need of real prayer. There is a person you know that has had five abortions in the last twelve years. She was caught in an act of adultry [sic] by her husband. She divorced the same husband twice in the last seven years. Before the last divorce was final she was sleeping with other men. This woman hired a lawyer to try to send her only child to the state reform school. She then deserted the child and even now does not contribute to his support. It is hard to believe a person so evil could walk inside a church but she does. If you ask her she will tell you she is a Christian. I don’t know if this woman ever asked God to forgive her but I know she has never asked her husband's forgiveness. So that you and others will not be so easily deceived [sic] I inform you that this black hearted person in your midist [sic] is no other than Carol Isaacks or Carol Reed. If you question the truth of the above statements a little cheeking will open your eyes. She may be pitied but she can not be trusted.
Appellee learned of the statement when Iva Nell Shaw, a member of her church, telephoned about it. Appellee’s church minister, Rev. Leroy Cunningham, gave her his copy of the statement. Appellee took the statement to an attorney, who filed a complaint against appellant under the Mississippi Actionable Word statute.
Appellant denied that he wrote or circulated the statement and testified that his son, Todd J. Isaacks, was responsible for same. Todd also testified that he did the deed. Appellee conceded on direct examination that she had experienced five (5) abortions, but stated that appellant knew about and consented to them. On cross-examination, she admitted that she was currently living with her boyfriend, Don Blay-lock. She was seeing him prior to the divorce as “girl friend-boyfriend.”
The record reflects that the parties retained joint ownership of their house in Greenville; that it was worth approximately $42,000 and $6,000 was still owing on it; that appellant has two jobs which provide an income between $17,000 and $19,000 per annum; and that, according to appellant, his net worth was nil.

Law

The principal argument of the appellant follows his first assigned error, i. e., that Mississippi’s Actionable Word Statute, MCA § 95-1-1 (1972), violates the First Amendment of the United States Constitution as applied to the states through the Fourteenth Amendment. The constitutional question was not raised, however, in the lower court, and we do not consider it here.[1] We notice as plain error the granting of Instruction P-3, which provides, in part:
The court instructs the jury that if you find, by a preponderance of the evidence, that the defendant published words, against the plaintiff, which from their usual construction and common acceptance, are considered as insults, and calculated to lead to a breach of the peace, then you should find for the plaintiff.
The Actionable Word Statute, MCA § 95-1-1 (1972), provides:
§ 95-1-1. Certain words actionable.
All words which, from their usual construction and common acceptation, are considered as insults, and calculated to lead to a breach of the peace, shall be actionable; and a plea, exception or demurrer shall not be sustained to preclude a jury from passing thereon, who are the sole judges of the damages sustained; *411 but this shall not deprive the courts of the power to grant new trials, as in other eases.
Beginning with the oldest cases Mississippi has on this question, Crawford v. Mellton, 11 Miss. (12 S & M) 328, 331 (1849), and Scott v. Peebles, 10 Miss. (2 S & M) 546 (1844), it is apparent that the intent of the Actionable Word Statute relates to the spoken word. In Crawford, the Court said: “the gravamen of the action is the saying of any words, whether true or false, in an insulting manner.” Crawford v. Mellton, 11 Miss. (12 S & M) 328, 331 (1849) (emphasis added). We are of the opinion that the purpose of the statute is to allow a cause of action where there is usually a face-to-face encounter or where words are uttered to another in an insulting manner and which would precipitate an immediate, forceful and violent reaction by a reasonable person. They are words of a kind and nature spoken under such circumstances that their very utterance would reasonably tend to provoke a breach of the peace.
In Crawford, supra, the words were “Wade H. Crawford swore a lie, and I can prove it.” In Jefferson v. Bates, 152 Miss. 128, 118 So. 717 (1928), the defendant stated that the plaintiff “set fire to and burned his house;” Tattis v. Karthans, 215 So.2d 685, 686 (Miss.1968), the defendant charged that the “plaintiff was an immoral and unfit person who used filthy and unbecoming language;” Davis v. Woods, 95 Miss. 432, 436, 48 So. 961 (1909), defendant asked plaintiff, “What in the G— d— hell are these infernal lies you have been circulating on me?” In Wells v. Branscome, 222 Miss. 1, 74 So.2d 743 (1954), involving a dispute over a cow, the defendant told the plaintiff that he was not going to do anything further about the cow,
[b]ecause you are such a G— d— crook I didn’t want to be seen with you; furthermore, I want you to get off my place and stay off; there is the gate, I want you to get out of here, your reputation is so bad I don’t want you hanging around.
222 Miss. at 5, 74 So.2d at 744. See also Nabors v. Mathis, 115 Miss. 564, 76 So. 549 (1917).
The appellee’s complaint is based upon the allegation that the appellant wrote an insulting statement and subsequently published it. We are of the opinion that the statute was designed to punish spoken words (not written), usually where there would be a face-to-face encounter, and, more importantly, no cooling-off time before a physical altercation occurred.[2] In the case sub judice, the statement was typewritten and placed on the windshields of cars in the church parking lot and in mailboxes of church members. It was not until sometime later that appellee received a copy of the statement from her minister and read it. We are of the opinion that the Actionable Word Statute was not enacted to cover such a situation, and that the judgment of the lower court should be, and it is, reversed and judgment is rendered here in favor of appellant.
REVERSED AND RENDERED.
HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
DAN M. LEE, P.J., not participating.

. As stated, the appellant appeared pro se through the trial below.

. The Actionable Word Statute was enacted when dueling was common in Mississippi and the South, and, obviously, one purpose of the statute was to provide an obstacle to that practice.